UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FABIANA IZABEL,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT B. DOWNING,<br>Chief Usher at the Executive Residence,<br><br>*Defendant*. | Civil Action No. 22-cv-2898 (CJN) |

## MEMORANDUM OPINION

Plaintiff Fabiana Izabel was born in Brazil and immigrated to the United States in 2008. *See* ECF No. 23 at 2-3. In August 2019, she was hired as the first female presidential butler at the White House, where she worked until January 2021. She alleges here that she suffered discrimination on the basis of race, sex, and national origin, was subjected to a hostile work environment, and was retaliated against when she complained to the EEOC. The government has filed a partial motion to dismiss, contending that some of Izabel's claims are untimely, that she failed to exhaust others, and that she has failed adequately to allege others. The Court agrees as to only some of those arguments, and therefore grants the government's motion in part.

### Background

Izabel is a Maryland resident who was born in Brazil and immigrated to the United States in 2008. *See* ECF No. 23 at 2-3.[1] In August 2019, she was hired as the first female presidential

---

[1] For purposes of the government's Motion, the Court of course accepts as true all well-pleaded facts in the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

1

butler at the White House. *Id*. at 3. She served along four other butlers, but was the only female butler and only butler of Brazilian descent. *Id*. Her work was supervised in various ways by five superiors: the presidential butler's manager, the administrative usher and human resources manager, the chief usher, the assistant chief usher, and later the maître d' and the presidential butler's manager. ECF No. 23 at 4.

Izabel alleges that from November 2019 until her termination in January 2021, she was "subjected . . . to numerous forms of unlawful maltreatment that worsened over time." ECF No. 23 at 7. She alleges that this mistreatment included more odious work assignments than those assigned to her colleagues, denials of overtime and leave requests, and an unflattering presidential portrait. *Id*. at 7-8. For example, Izabel alleges that on November 25, 2019, she was berated after she expressed reservations over allowing a male contractor to travel with her to pick up supplies for the annual White House Christmas Party. *Id*. at 4. She alleges that in December 2019, she was punished after that incident with "one-on-one coaching sessions" with a retired military official, where she was instructed to "follow every instruction given to her." *Id*. at 6. Then, she asserts, a white man of British descent was hired as maître d' and presidential butler manager without advertising that position to the butlers, a claimed deviation from standard hiring protocol. *Id*. And, she alleges, in September 2020 she was both ordered to "wrap 450 plates by herself in addition to completing her regular duties," *id*. at 7, and made to have her official portrait taken in a manner that made her uncomfortable. *Id*. at 8.

Izabel alleges that she informed her superiors about these incidents, but that no action was taken. On November 18, 2020 she contacted—without filing formal paperwork—an EEO counselor to complain about her work experiences. *See* ECF No. 23 at 10. She alleges that when her superiors found out, she was mocked "numerous times each week for being an Afro-Latin

woman from Brazil with a Brazilian accent." *Id*. On January 20, 2021, after the inauguration of President Biden, she was terminated. She filed a formal EEO complaint on February 16, 2021 with the Executive Residence's EEO office. *Id*. at 11.

Izabel seeks relief under various provisions of Title VII of the Civil Rights Act of 1964. Counts I through III seek relief for discrimination on the basis of sex, race, and national origin, respectively. ECF No. 23 at 12-14. Counts IV through VI seek relief for having worked in a hostile work environment based on her sex, race, and national origin, respectively. *Id*. at 14-16. Count VII alleges retaliation based on her complaint to the EEO. *Id*. at 17.

The government moves to dismiss in part, arguing that certain of Izabel's claims are either time-barred, insufficiently exhausted, or non-actionable. *See generally* ECF No. 24. For the reasons stated below, the Court agrees in part and disagrees in part.

**Analysis**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Public employers in the federal government are further required to make all "personnel actions affecting employees . . . free from any discrimination based on race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-16(a). Courts have interpreted Title VII as authorizing two types of claims relevant here: (1) discriminatory treatment claims based on discrete incidents stemming from a discriminatory intent and (2) hostile-work environment claims, which require an objectively and subjectively hostile or abusive environment but do not necessarily require a specific job-related event.

Before a plaintiff can pursue a Title VII claim in court, she must exhaust all administrative remedies. *See Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020) (internal quotations omitted). Among other things, exhaustion requires a plaintiff both to make a timely complaint to the EEOC and to describe in sufficient detail the basis for that complaint. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *see also Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998) ("Before suing under either the ADEA or Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC."). These administrative deadlines "are not jurisdictional. Rather, they function like a statute of limitations and 'like a statute of limitations, [are] subject to waiver, estoppel, and equitable tolling.'" *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

**I.      Claims Based on Discrete Acts that Occurred Before October 4, 2020**

A federal employee who does not "initiate contact with [an EEO Counselor] within 45 days of" of a discriminatory incident has not properly exhausted the administrative process. 29 C.F.R. § 1614.105(a)(1). Here, Izabel first contacted the EEO counselor on November 18, 2020. As a result, the government argues, the Court should dismiss all claims relating to incidents that occurred before October 4, 2020—that is, more than forty-five days before her first EEO complaint.

The Court agrees, as does Izabel. *See* ECF No. 26 at 6 ("Izabel acknowledges in paragraph 64 of the FAC that she does not seek Title VII liability . . . for discrete acts occurring outside the 45-day period for contacting an EEO counselor."). Accordingly, any claims for discrimination arising out of incidents before October 4, 2020 are dismissed.

**II.     Discrimination on the Basis of National Origin**

Exhaustion also requires a plaintiff to give notice of the allegedly discriminatory acts for which she seeks relief. At minimum, this means that "[o]nly those claims that are contained in the administrative complaint or that are 'like or reasonably related' to the allegations of the administrative complaint can be pursued in a Title VII lawsuit." *See William v. Spencer*, 883 F. Supp. 2d 165, 172 (D.D.C. 2012) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). The government contends that Izabel failed to state in her formal EEO complaint that she had suffered discrimination on the basis of national origin, and therefore such claims must be dismissed.

The Court again agrees. Izabel's EEO complaint did not indicate that she had been discriminated on the basis of national origin. *See generally* ECF No. 23 at 84-92. In Section 10 of the EEO complaint she did not check the box indicating that she had been discriminated on the basis of "National Origin." *Id*. at 84. She did, however, check the boxes indicating that she had been discriminated on the basis of "Race (Afro-Latina)," "Sex (Female)," "Genetic Information," and "Other (Discrimination, Abuse of Power)." *Id*. In addition, while Izabel made numerous references to the sex and race of various employees in the narrative attached to her EEO complaint, she did not include references to national origin or her Brazilian descent, such as those in her Complaint here. *Compare* Federal Complaint, ECF No. 23 at 10 ("At work she was always miserable because ignoring Chadha following her everywhere, mocking her hair, mocking her makeup, mocking her *Brazilian* origin, and mocking her *Brazilian* accent was a challenge.") (emphasis added) *with* EEO Complaint, ECF No. 23 at 87 ("[Chadha] does not miss the chance to make jokes about my look and accent.").

Counts III and Count VI, which are national-original claims, are therefore dismissed.

**III.    Retaliation**

5

Izabel alleges she suffered retaliation after her first communication with the EEO counselor on November 18, 2020. *See* ECF No. 23 at 10. A retaliation claim is only actionable if it results in a "materially adverse" action by a complainant's employer. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted) (defining "materially adverse" as an action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination"). The government contends that the only materially adverse action that Izabel suffered after November 18, 2020 was the termination of her employment on January 20, 2021. *See* ECF No. 24 at 14 ("The only adverse action alleged thereafter was Plaintiff's termination approximately two months later, i.e., in January 2021."); *see also Burlington N.*, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). Izabel again does not disagree. Count VII is therefore limited to her claim that her employment was terminated in retaliation for having engaged in protected EEO activities.

### IV.  Hostile Work Environment

To state a hostile work environment claim, a plaintiff must allege that she was subjected to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). This inquiry has two components: one objective, the other subjective. First, a plaintiff must allege that she personally found the work environment to be hostile and severe. *Id*. at 22. Second, she must allege that "a reasonable person in the plaintiff's position" would have found the environment abusive. *Id*. at 23. This objective element is assessed based on the "totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."

*Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)) (Kavanaugh, J.).

The government contends that the various incidents that Izabel complains of are too disparate and too trivial to plausibly state a claim of a hostile work environment. ECF No. 24 at 23-27. The government argues that the incidents she identified do not "collectively constitute one unlawful employment practice of pervasive, insulting, discriminatory conduct" that is sufficiently abusive to merit relief. *Id*. at 24 (quoting *Morgan*, 536 U.S. at 117). This includes the "disparaging remarks" that Izabel heard from her supervisors, which "do not demonstrate a sufficient level of offensiveness." *Id*. at 25.

The Court disagrees. Izabel alleges that she was subjected to "[t]aunt[ing] and mock[ing] . . . numerous times each week" by her supervisor based on her race and sex from May 2020 until her firing in January 2021. *See* ECF No. 23 at 8-9. She alleges that she was told by her supervisor that "she was nasty," that "he hates working with women," and was made "fun of . . . in the presence of her male . . . coworkers" from November 18, 2020 until her dismissal in January 2021. *Id*. at 10. She alleges that, as a result of these incidents, she suffered "mental anguish," *id*. at 11, including "frequent crying fits," "frequent nightmares," and "chronic anxiety." *Id*. at 10.

Based on these allegations, a reasonable jury could conclude that Izabel was subjected to sufficiently severe and pervasive insult and ridicule such that the conditions of her employment were abusive. *See, e.g.*, *Parris v. Becerra*, No. 20-cv-3363 (CJN), 2022 WL 306193, at *5 (D.D.C. Feb. 2, 2022) (plaintiff stated plausible claim for hostile work environment based on being called an "angry black man" and other racial stereotypes). To be sure, the government argues that the "taunting and mocking" that Izabel complains of were not "sufficiently severe" to

7

make her day-to-day work environment objectively "abusive." *See* ECF No. 27 at 9 (quoting *Morgan*, 536 U.S. at 117). But the out-of-circuit cases the government relies on involved a different procedural posture or set of facts than those at issue here. For example, the Eleventh Circuit's opinion in *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013 (11th Cir. 2008), was decided at the summary judgment stage, rather the motion to dismiss one. *See id*. at 1019. As for *Gurley v. David H. Berg & Assoc.*, No. 20-cv-9998 (ER), 2022 WL 309442 (S.D.N.Y. 2022), there the plaintiff's allegations were "more episodic than continuous and concerted." *Id*. Here, in contrast, the allegedly taunting remarks directed at Izabel were sufficiently pervasive and severe to objectively alter the conditions of her employment.

Beyond the taunting remarks, however, Izabel has not alleged "a series of constituent acts that are adequately linked such that they form a coherent hostile environment claim." *See* ECF No. 27 at 8 (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)). Those other alleged events—ranging from Izabel's driving Santos to the manner in which she was photographed—are simply too unrelated to each other to support a hostile work environment claim, which cannot, therefore be based on those events.

The government's motion to dismiss Counts IV and V is therefore granted in part and denied in part.

### Conclusion

For the forgoing reasons, the Court grants the government's Motion in part and denies it in part. An Order will issue contemporaneously with this Opinion.

DATE: February 7, 2024

_____
CARL J. NICHOLS
United States District Judge